[Filed December 14, 1885.]

## STATE v. JOHN GAUNT.

CODE OF CRIMINAL PROCEDURE—LEGISLATIVE POWER—DELEGATION OF TO
CODE COMMISSION.—"The Code of Criminal Procedure" is the title of a
law passed in 1864. The printed compilation of 1872 contains under the
same title the original act, and also additional sections adopted in 1864
as part of the Miscellaneous Laws. The collocation under the former
title of sections taken from the latter act does not change their legal
effect. Matter appertaining to one act cannot be transferred to another
except by appropriate legislation. And the legislature cannot delegate
to a code commission power to amend the laws of the state.
CONSTRUCTION OF STATUTE—REPEAL BY IMPLICATION—The act of February
17, 1885, repeals by implication title 1 of chapter 31, Misc. Laws, Comp.
1872.
SAME—PENALTY—CRIMINAL LAW.—A penalty for the violation of an act
necessarily falls with the repeal of the act. Such a penalty cannot be
applied to the violation of a subsequent law upon the same subject, un-
less expressly or by necessary implication made so to apply.
SAME—MISDEMEANOR.—Where an act is prohibited by law but no penalty is
provided, the doing of the act cannot be punished as a misdemeanor.
SAME—COMMON-LAW OFFENSE.—There are no common-law offenses in this
state, and its courts are limited to the trial and punishment of such mat-
ters, and such only, as have been specially committed to it.

KLAMATH COUNTY. Defendant appeals. Reversed.

*H. K. Hanna* and *E. B. Watson*, for Appellant.

*W. H. Holmes* and *E. D. De Peat*, for Respondent.

WALDO, C. J.    The defendant was accused by the grand
jury of Klamath County of selling spirituous liquors with-
out a license, contrary to the statute in such cases made
and provided. The case was argued here on the defend-
ant's demurrer to the indictment. The act, contrary to
the provisions of which the defendant is alleged to have
sold, is the act of February 17, 1885, entitled, "An act to
regulate the sale of spirituous liquors." The act pro-
vided no penalty. Sections 726 and 753 of the Code of
Criminal Procedure were, however, both relied on to sus-
tain the conviction and sentence.

The act of February 17, 1885, expressly repealed title 1, c. 31, Misc. Laws. That title (title 1, c. 31, Misc. Laws Or.), so called, as printed in the compilation made by Matthew P. Deady and Lafayette Lane, under the act of October 22, 1872, contained, except as hereinafter noted, title 1, c. 28, Misc. Laws, Comp. 1864, 771. As to the latter compilation, see joint resolution, Sess. Laws 1860, app. 4; Laws 1862, 122; and Governor's Message 1864, 13, and of 1865, 8. Taking the compilation of 1864 as authoritative, and as the starting-point, we find that said chapter 28 of that compilation was made up of 15 sections, that have dwindled to 11 sections in title 1, c. 31, Comp. 1872. A search after the four missing sections, 9, 10, 14, and 15, reveals 9, 10, and 14 as sections 685, 686, and 726 of the Code of Criminal Procedure. Section 15 seems to have been wrought into section 2, c. 21, Misc. Laws, 612. Section 14, or 726, of the compilation of 1872, relied on by the state, although printed as section 726 of the Code of Criminal Procedure, is, as a matter of law, no part of that Code, as will appear evident on a little consideration. The Code of Criminal Procedure was an act, introduced as senate bill No. 39, in the session of 1864, and after passing both houses, was approved, according to the Senate Journal of that year, 205, October 20, 1864. Said section 726 was not then a part of, nor has it since been added by the legislature as an amendment to, that act. It could become a part of that Code only by original enactment or by way of amendment. Now, the legislature cannot delegate to a code commission power to amend the laws of the state. If the act of 1872 professed to do that, it was *ultra vires*, and void. Acts of the legislature are records, and should be printed as recorded. General acts of parliament are always enrolled by the clerk of the parliament, and are delivered over into chancery, which enrollment in the

chancery makes them the original record. (*King v. Arundel*, Hob. 109.)  Here, the original record of an act of the legislature is deposited in the office of the secretary of state.  Now, were a party to plead, and to recite section 726 as being section 726 of the Code of Criminal Procedure, he must go out of court on a general demurrer; neither the roll of the act, nor any amendment thereto, showing any such section in it.  (*Holland's Case*, 4 Coke, note *g.*)  So acts which upon the roll or record appear to be passed without the consent of the lords or the commons are not statutes.  (Com. Dig. Parl. R. 4.) Courts *ex officio* take notice of a public act, and are the triers of it, if it be a statute or not.  (Holmes, Com. Law. 15.)  It is evident, therefore (and there are additional reasons under our constitution by which the title of an act becomes part of the act, and the subject-matter must be within the title), that matter appertaining to one act cannot be transferred to another act, except by appropriate legislation.  Therefore section 726, so called, of the Code of Criminal Procedure remains a part of the act from which it was taken.

The question next arises whether it must be considered a part of title 1, c. 31, repealed by the act of February 17, 1885.  To answer this in the negative is attended with more difficulty, logically and otherwise, than might cursorily appear.  If that title be simply the work of the code commission, unsupported by legislative sanction, no judicial notice can be taken of it.  In that case, the repealing clause would likely be an utter nullity.  If, however, the contrary view be the correct one, which ought rather to be presumed, then what authority had the commission to put part of an act under the title, and not the whole?  Suppose the public printer were to print under the title of an act but part of the act, and afterwards the legislature repeal the act by its title—the whole

act would, doubtless, be repealed. The act of the com-mission may be not unlike that of the public printer in the case supposed. To consider this question fully, and to enter into all the inquiries into which it might lead, would be difficult, and will be unnecessary when the present question may be decided on other grounds. This much has been advanced to call attention to a condition of the statute-book by which public and private rights may be imperiled.

A comparison of the provisions of title 1 of chapter 31, professed to be repealed by the act of February 17, 1885, will show that the former would have been and is re-pealed by the latter act by implication, without any ex-press repealing clause to that effect. (*United States* v. *Bennett*, 12 Blatchf. 349.) Section 10, 1864, or 726, 1872, is also in effect repealed, because the penalty it prescribes was for selling " without first having obtained a license agreeably to this title," and the title is gone, and every-thing under it to which the penalty could apply. The penalty was for the violation of the old act, and cannot be applied to an offender who has not violated it. In its nature, a penalty is an incident of the offense for which it is provided, and cannot stand separate from it. If, then, the old penalty shall apply to the new act, it is because the legislature have said that it shall apply to it. There is no express declaration to that effect. It must arise, if at all, by implication. It is a rule in the con-struction of statutes that incidents are always supplied by intendment, and that what is implied in a statute is as much a part of it as what is expressed. But these rules do not enable courts to supply defects in laws by a process which amounts to legislation. It proceeds upon the ground, says Dwarris, that the proposed addition is already necessarily contained, although not expressed, in the statute; in which case, it is not less cogent be-

cause not expressed. "A *casus omissus* can in no case be supplied by a court of law, for that would be to make laws (*Jones* v. *Smart*, 1 Term Rep. 52); and in particular, under the common law—which Mr. Vaillant, in his preface to Dyer's Reports, says that our kings liked not, because of its tendency to freedom—penal clauses are never supplied by intendment. "A penalty cannot be raised by implication, but must be expressly created and imposed," says *Jones* v. *Estis*, 2 Johns. 380. This case was cited and applied in *Health Department* v. *Knoll*, 70 N. Y. 530–536; *Berry* v. *Ripley*, 1 Mass. 167; *Ferrett* v. *Atwill*, 1 Blatchf. 151. Counsel for the defendant brought forward at the argument *Commonwealth* v. *Kelliher*, 12 Allen, 480, which, in principle, is the very case before us. The statutes of Massachusetts, 1864, c. 299, sec. 1, set out in the reporter's note, required, under a penalty, every owner or keeper of a dog to obtain a license. Afterwards, chapter 197, statutes of 1865, was enacted on the same subject, and repealed the former act by implication, but provided no penalty. A complaint was made for keeping an unlicensed dog. The court held that the penalty prescribed by the previous statute could not be imposed. "It was in express terms confined to a violation of the provisions of that act, which has been repealed." (And see *State* v. *Ashley*, Dud. (Ga.) 188.)

The answer to the next and last question in the case seems hardly less satisfactory and decisive. Section 753 provides that "whenever, by any law of this state, an act is declared to be a misdemeanor, and no punishment is prescribed therefor, the person committing the same, upon conviction thereof, shall be punished by imprisonment in the county jail not more than one year, or by fine not more than five hundred dollars." Some expressions let fall in *Commonwealth* v. *Kelliher* suggest that possibly the section is not applicable to an offense like

this. However that may be, the case may be disposed of on other grounds in a few words. The act of selling in this case was, without doubt, at common law a misdemeanor. "In every case where a statute prohibits anything, and doth not limit a penalty, the party offending therein may be indicted as for a contempt against the statute." (*Crouther's Case,* Cro. Eliz. 655; *King* v. *Harris,* 4 Term Rep. 202; *United States* v. *Coolidge,* 1 Gall. 493; Bishop's Crim. Law, 8, 237.) Had the Criminal Code made the common-law rule a statutory rule also, the case would have been met; but as the case stands, disobedience to a statute, considered as a contempt, as which it was indictable only where the statute had provided no penalty, is not a statutory misdemeanor. As for a misdemeanor at common law, no indictment will lie, because we have no indictable common-law offenses in this state. (McArthur, J., in *State* v. *Vowels,* 4 Or. 326.) We may look to the common law for definitions of crimes, but not for the crimes themselves. (*United States* v. *Coolidge,* 1 Gall. 489.) The statute may as much be said to declare the act of selling without a license a felony as a misdemeanor. The court cannot declare which was intended, and could not have said so at common law, but could say at common law that disobedience to a statute was a contempt of the statute, and indictable as such. The denial of jurisdiction over common-law offenses to the courts of the United States seems to have led to the same result. Thus it is laid down in *United States* v. *New Bedford Bridge,* 1 Wood. & M. 401, 439, "that if Congress does not declare particular acts to be offenses, and prescribe the extent of the punishment and place of trial, though the subject-matter is within the powers granted to the general government, no particular court has any right to try a person for doing these acts, or affix any punishment to them, as every court under the

general government is limited to the trial and punishment of such matters, and such only, as Congress has been pleased to confide to it."

It follows that the judgment must be reversed.

LORD, J. (concurring). It is unnecessary to consider the common-law definition of a misdemeanor, as our Code has fixed its precise signification. Section 753 is a general enactment, prescribing a certain measure of punishment of all misdemeanors for which no specified penalty is declared. As I understand it, the object of this section was to enable the legislature to declare various acts or omissions to be misdemeanors without the necessity of stating the punishment in each enactment. It affords a convenient mode for legislating upon minor offenses. All the legislature has to do is to declare that any person or persons doing or omitting to do certain acts, etc., shall be deemed guilty of a misdemeanor, and section 753 attaches and provides the penalty. It does away with the necessity of requiring in every case the legislature to affix its penalty to the act. As the act known as the Keady Law does not declare the person or persons doing or omitting to do the acts therein mentioned shall be deemed guilty of misdemeanors, section 753 cannot attach and provide the penalty.